PRODUCERS FINANCE CORPORATION et al. v. LEE.

No. 30409. Oct. 6, 1942.

*129 P. 2d 850.*

Fred L. Hoyt, of Oklahoma City, for intervener, plaintiff in error.

John A. Cochran, of Okemah, for defendant in error.

RILEY, J. This is an appeal from a judgment and decree, in an action by M. W. Lee, against plaintiff in error Producers Finance Corporation canceling of record a contract recorded in Okfuskee county, involving certain oil and gas mining leases. Plaintiff in error J. W. Garr intervened claiming valuable rights based upon said contract.

The parties will hereinafter be referred to as in the trial court, namely M. W. Lee as plaintiff, Producers Finance Corporation as defendant, and J. W. Garr as intervener.

In the year 1940 plaintiff obtained oil and gas mining leases on a block of land, including a part of the N. E. ¼ of section 34, township 12 north, range 8 east, with a view of development. Prior to June 5, 1940, Forest Anderson, of Seminole county, who is the father-in-law of the plaintiff, informed E. S. Hansberger, president of defendant corporation, that plaintiff was obtaining said oil and gas leases. Thereafter Hansberger went to Boley, where plaintiff was engaged in the banking business, and presented a proposition to drill a well for plaintiff on the acreage

he had acquired and expected to acquire.

On the 5th day of June plaintiff and defendant signed a written agreement purporting to be a tripartite agreement between plaintiff, defendant, and said Forest Anderson, wherein it was recited that plaintiff was acquiring a block of leases on approximately 900 acres in Okfuskee county; that plaintiff was desirous of having a well located and drilled on the N. W. ¼ of N. E. ¼ and the N. ½ of S. W. ¼ of N. E. ¼ of section 34, township 12 north, range 8 east, containing 60 acres. Other lands in the vicinity upon which plaintiff had or sought leases were described in said contract, wherein plaintiff was named as party of the first part, Producers Finance Corporation was named party of the second part, and Forest Anderson named party of the third part.

This contract further provided in part a consideration of the sum of $10 and other valuable considerations and mutual convenants. And that the party of the third part agreed to furnish a Wilson Rotary power rig with two Buda motors and all equipment except drill bits for drilling of the well, and that party of the second part agreed to cause said well to be drilled on said 60 acres to the Cromwell sand or to a depth of 3,400 feet, unless oil and/or gas is found in paying quantities at a lesser depth. Said first well to be drilled and completed free of any expense to the parties of the first and third part.

It provided that said leases were to be held in escrow in the Farmer's State Bank at Boley, Okla., until said actual drilling operations should be commenced on said well, after which the parties of the first and third parts agreed to execute and deliver to the party of the second part an assignment of seven-eighths undivided working interest in and to the 60-acre lease on which the well was to be drilled and a three-fourths undivided working interest in all of the balance of the leases, together with an assignment to a three-fourths undivided working interest in any additional leases which may have been obtained, either individually or jointly in connection with the block during a period of 90 days after the block was assembled. It being the intention that Lee and Anderson should retain a one-eighth undivided working interest in the 60 acres and the well and one-fourth undivided working interest in all of the balance of assembled leases or leases which were to be assembled.

The instrument further provided:

"In consideration of the undivided interest which the said Party of the Third Part is receiving for the use of said drilling rig, it is mutually agreed and understood that if production is found in the first well and/or if additional wells are elected to be drilled by the Party of the Second Part that the Party of the Second Part is to have the use of said drilling rig for drilling such additional wells, but it is expressively (sic) agreed and understood that the Party of the Second Part agrees to keep up the rig in good shape, and at all times in as good a state of repairs as the rig now is, reasonable wear and tear excepted and upon completion of said drilling operations to return said drilling rig and equipment in as good a state of repairs as it now is, with however, such reasonable wear and tear excepted.

"This memorandum agreement shall be considered as a temporary working agreement between parties hereto. It being the intention that when all the leases in the above block shall have been acquired that a permanent contract shall be drawn up."

After the contract was signed by plaintiff and defendant it was presented to Forest Anderson, who refused to sign. Thereafter, until about September 4, 1940, the plaintiff continued his efforts to obtain oil and gas leases on some of the land described in the contract and perhaps other lands. Defendant rendered considerable assistance. He employed Frank Clark to assist in securing oil and gas leases. However, plaintiff paid said Clark several hundred dollars as expenses incurred. In the meantime, Hansberger sought to inter-

est intervener in drilling the well. On at least one occasion plaintiff was present when Hansberger exhibited the agreement which had been signed by plaintiff and defendant. Leases on some of the land which was named in the contract were never acquired. About September 4, 1940, Hansberger and intervener went to Boley for the purpose of obtaining a new agreement with plaintiff leaving out Forest Anderson as a party. A contract was presented to plaintiff, but he refused to sign it although defendant contends that he agreed to the terms set forth therein. The agreement of June 5, 1940, was acknowledged in Okfuskee county on the date thereof. After September 4, 1940, and after plaintiff had refused to sign the contract prepared on that date, Hansberger filed the contract of June 5, 1940, for record in Okfuskee county. This action was commenced on September 23, 1940, to cancel said contract as a cloud upon the leasehold interest of said plaintiff. Before September 4, 1940, the intervener and defendant had some kind of an oral agreement wherein the intervener had bound himself to drill a test well at the location to be designated by the plaintiff, M. W. Lee, and defendant on said block of leases.

The defendant by answer alleged that Forest Anderson had orally assured the defendant that he would lease said string of tools for the drilling of the well, and that although Forest Anderson had never signed the contract of June 4, 1940, nevertheless the provisions of said contract were divisible and binding on the plaintiff and defendant. The answer further pleaded oral agreements and modifications to the contract and agreement of June 5, 1940, as between plaintiff and defendant, and that defendant had rendered assistance to plaintiff in procuring and attempting to procure leases, and had expended large sums of money in so doing, and that as between plaintiff and defendant said agreement was in every respect complete, binding, and obligatory, and that defendant was to have the privilege of drilling or causing to be drilled said test well without expense to plaintiff,

and that under the circumstances defendant was entitled to receive a share in said leases, and that the transactions between plaintiff and defendant amounted to a joint adventure. The prayer was that plaintiff be denied relief for want of equity, that costs be assessed against plaintiff, and that the contract of June 5, 1940, be declared binding as between plaintiff and defendant as modified by the oral agreement as to location of the well.

Intervener asserted his interest in the lease by virtue of the contract between himself and defendant, and a judgment was sought denying cancellation of the contract between the plaintiff and defendant, but providing for assignments and conveyances of said oil and gas leases to intervener and for a judgment against the plaintiff, M. W. Lee, for the sum of $200,000.

Intervener attached to his plea an instrument claimed to be the contract and agreement between himself and defendant, which appears to have been reduced to writing and executed November 26, 1940.

The issues joined were tried to the court without a jury. The evidence conclusively shows that Forest Anderson was the owner of the lease covering the 60-acre tract of land upon which the agreement of June 5, 1940, provided the test well should be located. The trial court entered finding that the instrument dated June 5, 1940, and recorded on September 7, 1940, was never executed by the said plaintiff and said defendant so as to become a binding contract between the said parties; neither the defendant nor interpleader had right, title, or estate in and to the oil and gas leases involved; that there never existed between plaintiff and defendant any joint adventure or mining copartnership; that defendant and interpleader had no right, title, interest, or estate in or to any of the oil and gas leases set forth by the plaintiff by reason of said alleged mining copartnership or joint adventure. The court further found, at the request of the interpleader, that no adjudication should be

had between the defendant and interpleader. Judgment was entered accordingly. Defendant and interpleader appeal. The defendant Producers Finance Corporation has filed no brief, and we assume abandonment of its appeal.

The rights of interpleader depend entirely upon whether the defendant is entitled to prevail as against the plaintiff.

An examination of the record will disclose that the evidence was conflicting. The first finding of the trial court that the agreement signed by plaintiff and defendant dated the 5th day of June, 1940, and recorded on September 7, 1940, was never executed by the plaintiff and defendant so as to become a binding contract between the parties thereto, is fully sustained by the record. It may be noted that this agreement specifically provided that the test well proposed to be drilled was to be drilled upon a tract of land containing 60 acres upon which Forest Anderson owned and had the oil and gas leases. It also specifically provided that Forest Anderson was to furnish a Wilson Rotary power rig with two Buda motors and all the necessary drilling equipment, except drill bits, for drilling said well. It is clear that in order to carry said agreement into full effect it was necessary to have the assent and signature of Forest Anderson. The witness for defendant, Hansberger, testified that before and after said agreement was signed by the plaintiff and defendant that the agreement should be binding upon said parties and would be carried out whether Forest Anderson signed the agreement or not. Plaintiff Lee positively denied any such agreement. It cannot be said that the finding of the trial court in this respect is against the clear weight of the evidence.

The second finding of the trial court is that there never existed between said plaintiff and said defendant any joint adventure or mining copartnership. The evidence on this question is likewise conflicting. While the record shows that there were considerable joint efforts to obtain additional leases after Forest Anderson had refused to sign the agreement, the finding of the trial court as to the nonexistence of a joint adventure or mining copartnership is not against the clear weight of the evidence. Intervener cites a number of cases wherein the term "joint adventure" is defined, but the question of whether or not such relations existed is always a question of fact to be determined from the evidence.

Affirmed.

OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and CORN, V. C. J., absent.